**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF GEORGIA**
**SAVANNAH DIVISION**

| | |
|---|---|
| LINDA FABEAN, | |
| Plaintiff, | CIVIL ACTION NO.: 4:23-cv-258 |
| v. | |
| BATH & BODY WORKS, LLC, | |
| Defendant. | |

## **O R D E R**

Before the Court is Defendant Bath & Body Works, LLC's Motion for Summary Judgment. (Doc. 59.) This case arises from a trip and fall that occurred while Plaintiff Linda Fabean was shopping at Defendant's store. (See id. at p. 1; doc. 72, p. 1; see generally doc. 1-1, pp. 11–15.) Plaintiff alleges Defendant's negligence caused her fall, and she seeks to hold Defendant liable for the injuries she sustained because of the fall. (Doc. 1-1, pp. 11–15.) Defendant moved for summary judgment arguing that Plaintiff has failed to provide probative evidence to support any element of her negligence claim. (Doc. 59.) Plaintiff filed a Response. (Doc. 71.) For the reasons below, the Court **DENIES** Defendant's Motion for Summary Judgment. (Doc. 59.)

### **BACKGROUND**

### I.    **Factual Background**

The Court derives the following facts from the parties' submissions and the summary judgment record. (Docs. 1, 1-1, 59, 60, 71 & 72.) Under Local Rule 56.1, when a fact is undisputed, the Court includes the fact. For disputed facts, the Court reviews the record to determine if a material dispute exists. Where the other party's response reflects the record cited more accurately, the Court modifies the proposed fact and cites the record. The Court also

excludes immaterial facts, those stated as an issue or legal conclusion, those not supported by a citation to evidence, or those that the record citation fails to support.  And, where appropriate, the Court includes facts drawn from its review of the record.  See Williams v. Wal-Mart Stores E., LP, 661 F. Supp. 3d 1264, 1266 (N.D. Ga. 2023).  The following facts are undisputed unless otherwise stated.

### A.     Plaintiff's Fall

On December 11, 2022, Plaintiff Linda Fabean and her husband went shopping at a Bath & Body Works ("BBW") store in Savannah, Georgia.  (Doc. 72, pp. 1–2; doc. 59-1, p. 25.)  BBW was running a "Candle Day" promotion, offering a large sale on candles.  (Doc. 72, p. 3.)  Because of the sale, the store was crowded, and Plaintiff had to walk slowly to safely navigate the crowd.  (Id.)  Plaintiff admits that, as she was walking through the store, she was not looking at the floor because she was looking at the people in front of her so that she did not bump into someone or knock someone over.  (Id. at pp. 4–5.)  Plaintiff testified that, prior to her fall, she did not see anything on the floor or in the walkway.  (Doc. 59-1, p. 31.)  Plaintiff was walking to the back of the store trying to get through the crowd when suddenly "something was around [her] feet."  (Doc. 72, p. 4; doc. 59-1, p. 27.)  She tried to take another step to get "unloose of whatever" was around her feet and she fell onto her left side, injuring her knees, left hip, and back.  (Doc. 72, pp. 1, 4; doc. 59-1, pp. 27–28.)  Plaintiff testified that she "did not know what was going on" as she began to fall, but it "felt like something was wrapped around [her] feet."  (Doc. 72, p. 4; doc. 59-1, pp. 27–28.)  BBW employee Ellen King testified that she was on the opposite side of the table where Plaintiff fell and saw Plaintiff "slowly go down" as she "walk[ed] through the crowd of people."  (Doc. 72, pp. 9–10; doc. 59-3, pp. 9–10.)

BBW often stored "candle crates"—cardboard, egg crate-like cartons for customers to use to hold candles—under display tables in the store.  (Doc. 72, pp. 1, 6; doc. 59-1, p. 28.)  The parties appear to agree that BBW was storing candle crates under a display table on the day of the incident, but the parties dispute—and the record is unclear about—whether a candle crate (or more than one crate) was in the walkway at the time of the fall and whether a crate caused Plaintiff's fall.  In her deposition, Plaintiff testified that she had not seen any candle crates under the display table or scattered in the walkway prior to her fall.  (Doc. 59-1, p. 31.)  After she fell, however, Plaintiff realized that a candle crate was stuck to her foot and she saw that the candle crates "were all stacked up underneath the table."  (Doc. 72, pp. 12–13; doc. 59-1, pp. 28–30.)  Plaintiff stated that, "[a]fter the incident, [she] noticed that [the candle crates] were kind of like scattered.  They weren't in a straight pile or anything and one was on [her] shoe."  (Doc. 59-1, p. 32; see doc. 72, pp. 2, 8.)  Plaintiff testified that she does not know if she stepped in more than one crate or if she stepped in a single crate multiple times, specifically testifying that "if I stepped in two, I don't know.  If I stepped in one and then stepped in another spot of it, I don't know.  I just know I stepped into a candle crate."  (doc. 72, p. 7; doc. 59-1, p. 29.)

Plaintiff does not know how or when the candle crate(s) would have gotten into the walkway.[1]  (Doc. 72, p. 14; doc. 59-1, p. 29.)  She testified that she did not see anyone else trip and fall or have any other kind of trouble because of a candle crate, though she says a customer told her that another person "had almost tripped over some [candle crates] earlier when she was in the store."  (Id. at p. 30.)

---

[1]  Plaintiff testified that there were people who walked in front of her prior to her fall and speculated that "maybe somebody else had knocked it over" and explained that "there were children playing around in the store and stuff like that, so who knows."  (Doc. 72, p. 14; doc. 59-1, p. 32.)  Plaintiff testified that "[she] guess[es]" the candle crates that were stacked underneath the table "shifted or slipped away . . . and they had come out into the aisle" and she "did not know that" before she fell.  (Doc. 59-1, p. 28.)

3

After Plaintiff fell, Plaintiff's husband took pictures of the scene. (Doc. 59-2.) The pictures depict a display table, candle crates, and a walkway, and do not clearly show any loose, scattered, damaged, or crushed candle crates. (Doc. 72, pp. 2, 14; doc. 59-2.) Acknowledging that the photos do not show the candle crate or specific hazardous condition that caused her fall, Plaintiff points out that she testified that an employee stacked the crates up "nice and neat" underneath the table after she fell. (Doc. 72, pp. 2, 14; doc. 59-1, p. 29.) Plaintiff explains that the pictures "show what the candle crate stacks looked like and where they were located. If the subject crate was damaged after Plaintiff stepped in it, the employees would not have put it back under the table for customers to use." (Doc. 72, pp. 2–3.)

Three BBW employees working at the time of Plaintiff's fall testified that, at least after Plaintiff fell, they did not observe any objects in the walkway. (See docs. 59-3, 59-4 & 59-5.) King testified that she immediately inspected the area of the floor where Plaintiff fell, picked up the glass, and made sure that nothing was on the floor. (Doc. 59-3, p. 11.) King stated that the candle crates were "underneath the table on the side" next to where Plaintiff fell. (Id. at p. 11.) King testified that she did not see Plaintiff step into or onto a candle crate and that she did not see any candle crates in the walkway or anything on the floor except for the glass. (Id. at p. 13.) BBW employee Kayleigh Woelk testified that she did not witness Plaintiff's fall and did not remember much about the incident, but that she did not "recall anything else being out of place." (Doc. 59-5, p. 22.)

The BBW assistant store manager present at the time of Plaintiff's fall, Kristopher Mitchell, testified that he did not witness the incident, but he responded to the scene and spoke to Plaintiff after King alerted him of Plaintiff's fall. (Doc. 59-4, p. 43–44.) The record is silent as to how much time passed between Plaintiff's fall and Mitchell's response, but King testified that she went

to get Mitchell from the back room after she cleaned up the broken glass on the floor. (See doc. 59-3, p. 11.) Mitchell testified that he then went to the back room to find the binder with BBW policies and procedures, which he could not find, and he then called another BBW store "to be sure what the procedures were." (Doc. 59-4, p. 44–45.) Mitchell testified that he then went to speak to Plaintiff and to assess the scene. (Id. at p. 45.) He testified that "it didn't look like anything was on the floor. There wasn't any liquid. There [were not] any objects on the floor . . . . It . . . didn't look like honestly anybody fell or anything, that an incident had occurred." (Id. at p. 58.)

### B. BBW's Policies and Inspection Procedures

According to Mitchell, BBW employees are trained to constantly scan the floors and remove any hazards. (Doc. 72, p. 11; doc. 59-4, p. 29.) During his deposition, Mitchell explained that employees are supposed to "constantly" move through the store in a "figure eight" motion, "seeing if any issues are . . . happening in the store, if anything is in the way, anything is . . . on the floor, anything like that . . . ." (Doc. 59-4, p. 29.) Mitchell testified that, likewise, the management team working in the store is "supposed to constantly be moving" and conducting "figure eights" "as often as [they] can." (Id. at p. 29–31.) Mitchell noted that no documentation methods exist to record the completion of a "figure eight." (Id. at p. 31.) Woelk similarly testified that it is "a general rule of thumb that [BBW employees] clean as [they] go." (Doc. 59-5, p. 16.)

Concerning the implementation of these expectations on the day of Plaintiff's fall, Mitchell testified that he was at the front of the store when he saw Plaintiff walk in with her husband, and he then conducted a figure eight and returned to front of the store. (Doc. 59-4, p. 44.) Woelk and King both testified that they did not remember when they were last in the specific area where Plaintiff fell before the incident. (Doc. 59-5, p. 21; doc. 59-3, p. 13.)

5

As to the storage of the candle crates in BBW stores, King testified that while candle crates were often stored by the cashiers, they were also stored in stacks underneath display tables. (Doc. 59-3, pp. 8–9.) She testified that, in accordance with BBW guidance, employees "would stack the crates in one another and then [employees] would put them on the side of the table [under the tables' overhang] to where [the crates are] against the table so that if customers are shopping and it's busy, they can grab a crate and shop with it." (Id.) Similarly, Mitchell testified that employees "keep [the candle crates] behind the register and [employees] also keep them sometimes on the sales floor underneath . . . the tables" when there is a candle sale. (Doc. 59-4, pp. 64–65.) He clarified that pursuant to BBW guidelines, candle crates "can be on the sales floor as long as they're under the table or under the overhang of a table." (Id. at p. 65.)

Woelk similarly testified that BBW employees "used to stack [candle crates] right under tables so [BBW employees] could easily grab one" to give to customers. (Doc. 59-5, p. 18.) According to Woelk, BBW guidelines provided that candle crates would be stored "[u]nder tables, out of the main floors. They could not be tucked in corners . . . . They had to be under the table where they were out of the way." (Id. at p. 19.) When asked if she had ever observed candle crates that were stacked but not completely under the table, Woelk stated "that's something that usually when [she would] see it, [she would] try to remedy it . . . and push [the candle crates] under with [her] foot or something like that." (Id.)

## II. Procedural History

Plaintiff initially filed this suit in the State Court of Chatham County, asserting a claim for negligence and seeking compensatory damages. (Doc. 1-1, pp. 3–7.) Plaintiff alleges that Defendant BBW "owed a legal duty of reasonable care to invitees to inspect and keep the premises in a safe condition and to warn Plaintiff of hidden dangers or defects that were not discoverable in

the exercise of reasonable care," and that it "had actual and/or constructive knowledge of the [candle crates], that [were] partially obstructing the walkway, but [were] not visible to patrons." (Doc. 1-1, pp. 13–14.) Plaintiff alleges that Defendant "breached its duty of reasonable care" by (1) failing to inspect the subject area for dangers conditions, (2) failing to warn patrons of a dangerous condition it knew or should have known existed in the subject area, and (3) failing to rectify the dangerous condition in the subject area when it knew or should have known said condition existed. (Id. at p. 14.)

Defendant removed the case to this Court, (doc. 1), and filed its Motion for Summary Judgment, (doc. 59). Defendant argues that summary judgment is warranted on Plaintiff's claim because no genuine issue of material fact exists and (1) Plaintiff has failed to establish the existence of a hazardous condition; (2) Defendant lacked actual or constructive knowledge that a hazard existed; (3) Plaintiff was or should have been aware of an open and obvious static condition; and (4) Plaintiff has failed to establish causation. (Id.) Plaintiff filed a Response. (Doc. 71.)

## LEGAL STANDARD

Summary judgment "shall" be granted if "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is 'material' if it 'might affect the outcome of the suit under the governing law.'" FindWhat Inv'r Grp. v. FindWhat.com, 658 F.3d 1282, 1307 (11th Cir. 2011) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). A dispute is "genuine" if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.

The moving party bears the burden of establishing that there is no genuine dispute as to any material fact and that it is entitled to judgment as a matter of law. See Williamson Oil Co. v. Philip Morris USA, 346 F.3d 1287, 1298 (11th Cir. 2003). Specifically, the moving party must

identify the portions of the record which establish that there are no "genuine dispute[s] as to any material fact and the movant is entitled to judgment as a matter of law." Moton v. Cowart, 631 F.3d 1337, 1341 (11th Cir. 2011). When the nonmoving party would have the burden of proof at trial, the moving party may discharge its burden by showing that the record lacks evidence to support the nonmoving party's case or that the nonmoving party would be unable to prove her case at trial. See id. (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986)). If the moving party discharges this burden, the burden shifts to the nonmovant to go beyond the pleadings and present affirmative evidence to show that a genuine issue of fact does exist. Anderson, 477 U.S. at 257.

In determining whether a summary judgment motion should be granted, a court must view the record and all reasonable inferences that can be drawn from the record in a light most favorable to the nonmoving party. Peek-A-Boo Lounge of Bradenton, Inc. v. Manatee Cnty., 630 F.3d 1346, 1353 (11th Cir. 2011) (citing Rodriguez v. Sec'y for Dep't of Corr., 508 F.3d 611, 616 (11th Cir. 2007)). However, "facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." Scott v. Harris, 550 U.S. 372, 380 (2007). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Id. (citation and emphasis omitted). Additionally, the Court is not permitted to make credibility determinations, weigh conflicting evidence to resolve disputed facts, or assess the quality of the evidence. Reese v. Herbert, 527 F.3d 1253, 1271 (11th Cir. 2008).

**DISCUSSION**

**I.   Negligence and Premises Liability Law**

Plaintiff's sole cause of action is for negligence, based on the trip-and-fall incident. (Doc. 1-1, pp. 3–7.) To prevail on a cause of action for negligence under Georgia law, a plaintiff must

establish the essential elements of duty, breach of duty, proximate causation, and damages. Black v. Ga. S. & Fla. Ry. Co., 415 S.E.2d 705, 707 (Ga. Ct. App. 1992). Under Georgia law, the owner or occupier of real property owes a duty to its invitees to exercise ordinary care in keeping its premises safe. O.C.G.A. § 51-3-1. "This includes inspecting the premises to discover possible dangerous conditions of which the owner/occupier does not have actual knowledge and taking reasonable precautions to protect invitees from dangers foreseeable from the arrangement or use of the premises." Robinson v. Kroger Co., 493 S.E.2d 403, 408–09 (Ga. 1997) (internal citations omitted).

Nonetheless, in Georgia, "proof of a fall, without more, does not give rise to liability on the part of a proprietor." All Am. Quality Foods v. Smith, 797 S.E.2d 259, 261 (Ga. Ct. App. 2017) (quoting Ingles Mkts., Inc. v. Carroll, 765 S.E.2d 45, 47 (Ga. Ct. App. 2014)). "Whether a hazardous condition exists is the threshold question in a slip [or trip] and fall case." Season All Flower Shop, Inc. v. Rorie, 746 S.E.2d 634, 638 (Ga. Ct. App. 2013). Additionally, to survive a summary judgment motion, a plaintiff must also show that the defendant owner had actual or constructive knowledge of the hazard. Drew v. Istar Fin., Inc., 661 S.E.2d 686, 689 (Ga. Ct. App. 2008). Lastly, the owner's knowledge must be superior to any knowledge the plaintiff may have had of the hazard. Hartman v. Clark, 801 S.E.2d 66, 67 (Ga. Ct. App. 2017); Garrett v. Hanes, 616 S.E.2d 202, 204 (Ga. Ct. App. 2005) ("The true basis for an owner's liability is [its] superior knowledge of the existence of a condition that could subject [its] invitees to an unreasonable risk of injury.").

## II.     Existence of a Hazard

Defendant first argues that summary judgment is warranted because Plaintiff "fails to meet her 'threshold burden' of demonstrating a hazardous condition that posed an unreasonable risk to

invitees."  (Doc. 59, p. 10.)  "Where the plaintiff cannot show the existence of a hazardous condition, she cannot prove the cause of her injuries and there can be no recovery because an essential element of negligence cannot be proven."  Glynn-Brunswick Mem'l Hosp. Auth. v. Benton, 693 S.E.2d 566, 568 (Ga. Ct. App. 2010) (internal quotations omitted).  "[T]he plaintiff must produce evidence of what foreign substance, condition, or hazard caused her to slip and fall." Taylor v. Thunderbird Lanes, LLC, 748 S.E.2d 308, 311 (Ga. Ct. App. 2013) (internal quotations omitted).  "Guesses or speculation which raise merely a conjecture or possibility [of a hazardous condition] are not sufficient to create even an inference of fact for consideration on summary judgment."  Benton, 693 S.E.2d at 568 (quoting Brown v. Amerson, 469 S.E.2d 723, 725 (Ga. Ct. App. 1996)).  "Rather, the plaintiff must produce evidence of what foreign substance, condition, or hazard caused [her] to slip and fall."  Id. (internal quotations and citation omitted).

In the Amended Complaint, Plaintiff alleges that she "tripped and fell on [candle crates] that [were] partially obstructing the walkway, but [were] not visible to patrons." (Doc. 1-1, p. 13.) Her own deposition testimony supports this theory.  She testified that, as she walked through the walkway, it "felt like something was wrapped around [her] feet," and she explained that she fell as she was trying to get "unloose of whatever it was." (Doc. 59-1, pp. 27–28.)  After she fell, she saw a candle crate stuck to her shoe and other candle crates scattered in the walkway. (Doc. 59-1, pp. 29–30.)  Moreover, BBW employee testimony confirmed that candle crates were not supposed to protrude into or otherwise obstruct the walkway.  (See, e.g., doc. 59-5, p. 19.)

Defendant argues that Plaintiff's allegations are "contradicted by objective evidence including photographs and her own deposition testimony."  (Doc. 59, p. 11.)  As to the photographs, Defendant claims that they show "a well-lit area with clear, unobstructed walkways" and "do not show loose[,] scattered candle crates in the walkway or a crushed candle crate that

appears to have been stepped in." (Id.) The Court disagrees with Defendant's claim that the photographs contradict Plaintiff's testimony. While the photographs do not *confirm* Plaintiff's testimony, Plaintiff has stated that they were taken after she fell and after employees cleaned the area (as is apparent from the photographs themselves, one of which shows that broken glass in the walkway was being swept). (See doc. 59-2, p. 2.) Plaintiff has provided the photographs to "show what the candle crate stacks looked like and where they were located," and she acknowledges that they do not show any damaged candle crates in the walkway or under the table because, as she explains, "[i]f the subject crate was damaged after [she] stepped in it, the employees would not have put it back under the table for customers to use." (Doc. 72, pp. 2–3.) Additionally, the photographs show stacks of candle crates that appear to be placed partially under a display table overhang and they also show stacks of candle crates that are significantly protruding out from under the display table overhang. (See generally doc. 59-2.) As for Plaintiff's testimony, Defendant has failed to point to specific testimony from Plaintiff that directly contradicts her claim and the supporting evidence that, as Plaintiff walked through the store, she stepped into a candle crate that was protruding (whether partially or fully) into the walkway (when it was not supposed to be protruding into the walkway). To the contrary, Plaintiff testified that, while she did not know how many candle crates she stepped on, she knows that she stepped on a candle crate. (Doc. 72, p. 7; doc. 59-1, p. 29.)

The foregoing evidence, viewed in the light most favorable to Plaintiff, could lead a reasonable jury to conclude that Plaintiff tripped and fell because of a hazard created by a candle crate protruding into the walkway. See Big Apple Super Market of Rome, Inc. v. Briggs, 115 S.E.2d 385, 387 (Ga. Ct. App. 1960) ("Under the facts here alleged, the jury could find that the carton in question was negligently placed so as to protrude into the aisle in such a manner as to

threaten danger to customers whose attention was diverted from the floor by adjacent displays of merchandise."). Accordingly, Defendant is not entitled to summary judgment on this basis.

### III.    Defendant's Knowledge of the Hazard

Next, Defendant argues that, "[e]ven if a hazard existed, [Plaintiff] provides no evidence that BBW had actual or constructive knowledge of it." (Doc. 59, p. 12.) Plaintiff has not pointed to evidence of actual knowledge. Accordingly, this question turns on whether there is sufficient evidence that BBW had constructive knowledge of candle crates protruding into the walkway. See Hartman, 801 S.E.2d at 67. A plaintiff may demonstrate a proprietor's constructive knowledge of a hazard by showing that "(1) a store employee was in the immediate area of the hazard and could have easily seen [it] or (2) the [hazardous condition] remained long enough that ordinary diligence by the store employees should have discovered it." Johnson v. All Am. Quality Foods, Inc., 798 S.E.2d 274, 277 (Ga. Ct. App. 2017). According to Defendant, the evidence that it had constructive knowledge of a hazard "is speculative at best." (Doc. 59, pp. 12–13.)

Genuine issues of material fact exist at least as to the second method for showing Defendant's constructive knowledge: whether the hazardous condition existed long enough that ordinary diligence by the store employees should have discovered it. Johnson, 798 S.E.2d at 277 (citation omitted). Regarding this method, "[i]n order to prevail at summary judgment based on lack of constructive knowledge, *the owner* must demonstrate not only that it had a reasonable inspection program in place, but that such program was actually carried out at the time of the incident." Sanderson Farms, Inc. v. Atkins, 713 S.E.2d 483, 487 (Ga. Ct. App. 2011); see also Straughter v. J.H. Harvey Co., Inc., 500 S.E.2d 353, 355 (Ga. Ct. App. 1998) (collecting cases). Viewing the evidence in the light most favorable to the Plaintiff, the Court finds that Defendant has not demonstrated that it had a reasonable inspection program in place nor has it demonstrated

that any sort of inspection program was actually performed at the time of Plaintiff's trip and fall, (see doc. 59, pp. 12–14).

Defendant relies on Mitchell's testimony about "training involving frequent inspections, walking through the store and conducting a figure-8 multiple times a day" as well as his testimony that employees are trained to constantly scan the floors and remove any hazards.  (Id. at p. 13 (citing doc. 59-4, pp. 29–31); doc. 72, p. 11.)  Woelk similarly testified that it is "a general rule of thumb that [BBW employees] clean as [they] go."  (Doc. 59-5, p. 16.)  However, this testimony fails demonstrate that BBW had a "reasonable inspection program," as the testimony does not indicate that there was a schedule or any sort of zones or assigned areas for these walk throughs to ensure that all areas of the store floor would be inspected routinely throughout the day.  See, e.g., Benefield v. Tominich, 708 S.E.2d 563, 567–68 (Ga. Ct. App. 2011) (declining to hold as a matter of law that an employee duty list that provides generally that the store is to be kept neat and tidy at all times and that all shifts are responsible for keeping the area free of debris constitutes a reasonable inspection program); Ingles Mkts. v. Martin, 513 S.E.2d 536, 537–39 (Ga. Ct. App. 1999) (affirming the denial of summary judgment where it was "not clear that . . . periodic sweeping constituted a reasonable inspection program," where testimony was that the store's floor was "usually" swept every hour); KMart Corp. v. Jackson, 521 S.E.2d 93, 96 (Ga. Ct. App. 1999) (finding that instruction to employees to "constantly walk[ ] the store" was insufficient to conclude that the defendant's inspection procedure was reasonable as a matter of law).  Based on the testimony, it was up to employees to decide when and where they scanned the floors (i.e., "as [they] go" and "multiple times a day").[2]

---

[2]  Also, without evidence about the size of the store, it cannot be said that passing through the store in a "figure eight" pattern would enable an employee to observe hazards—such as candle crates jutting out from under a table—particularly, depending on where on the store floor that hazard existed.

13

Moreover, even if the evidence demonstrates BBW had a reasonable inspection program, "proof of the mere existence of . . . customary procedures is insufficient." Sanderson Farms, Inc., 713 S.E.2d at 488. Rather, as stated before, "[e]vidence establishing an adherence to customary inspection and cleaning procedures on the specific day in question is required." Id. Here, Defendant has failed to demonstrate that the inspection procedures were adhered to at the time Plaintiff fell. For instance, while it is not necessarily required, Defendant has not produced any logs or records that its employees performed any sweeps or inspections. (See doc. 59; see also doc. 59-4 at p. 31 (Mitchell's testimony that BBW did not have documentation procedures to log the completion of figure eight inspections).) The only evidence before the Court of any meaningful "walk through" or "scan" is Mitchell's testimony that he performed a "figure eight" after Plaintiff entered the store, but there is no evidence that Mitchell actually observed or inspected the area where Plaintiff later fell.[3] See, e.g., Plymale v. Cheddars Casual Café Inc., No. 7:20-CV-102 (WLS), 2022 WL 988313, at *9 (M.D. Ga. May 31, 2022) (denying summary judgment where "Defendant present[ed] evidence that its inspection policy was in existence and in place but offer[ed] no direct evidence," such as "records or logs of any inspections," that the "policy was actively followed on the date of the incident").

Because Defendant failed to establish that it had a reasonable inspection program, much less that its employees followed any such program and procedures at the time of the incident, the

---

[3] The fact that neither party has presented argument or evidence as to the amount of time that may have elapsed between Mitchell's figure eight inspection and Plaintiff's fall does not impact the Court's decision here. (See doc. 1-1, pp. 11–15; doc. 59; doc. 71; doc. 72.) Because Defendant has failed to show that its "reasonable inspection procedures were in place and followed at the time of the incident" (or, for that matter, that the area where Plaintiff fell had actually been inspected prior to her fall), Plaintiff "need not show how long [the] [hazardous condition] ha[d] been on the floor." Alleman, 2022 WL 2210065, at *4 (quoting Deborde v. KFC U.S. Props., Inc., No. 1:05-CV-1228-JOF, 2007 WL 781881, at *2 (N.D. Ga. Mar. 12, 2007)).

Court cannot conclude as a matter of law that Defendant lacked constructive knowledge of the candle crate in the walkway at the time Plaintiff fell.  Accordingly, the Court declines to grant summary judgment to Defendant on this basis.

## IV.   Plaintiff's Superior Knowledge and Related Arguments (Open and Obvious Condition, Proximate Cause)

Defendant next argues that summary judgment is warranted because Plaintiff "had a duty to exercise ordinary care for her own safety" and she failed to observe "the open and obvious static condition in the store."  (Doc. 59, p. 14.)  Defendant argues that "boxes on the floor of a store are considered static conditions."  (Id. (citing Carr v. Sears, Roebuck & Co., 487 S.E.2d 415, 416 (Ga. Ct. App. 1997); Murphy v. Janilink Corp., 913 S.E.2d 420 (Ga. Ct. App. 2025).)

"A static condition is one that does not change and is dangerous only if someone fails to see it and walks into it.  If nothing obstructs the invitee's ability to see the static condition, the proprietor may safely assume that the invitee will see it and will realize any associated risks." Rentz v. Prince of Albany, Inc, 797 S.E.2d 254, 257 (Ga. Ct. App. 2017).  "[I]n cases involving static conditions, if the invitee knows of the condition, the proprietor has no duty to warn the invitee and no liability for resulting injury to the invitee; the invitee knows as much as the proprietor does.  By acting, the invitee assumes the attendant risks." Poythress v. Savannah Airport Comm'n, 494 S.E.2d 76, 79 (Ga Ct. App. 1997).  The Court can presume an invitee knows of a static condition "when an invitee has previously successfully traversed the area." Id.  Here, there is no evidence that Plaintiff observed the static condition that caused her injury, or that she had previously successfully traversed the area of the store where the candle crates were jutting into the walkway prior to the traverse of the area when she fell.  (See generally docs. 1, 1-1, 59, 60, 71 & 72.)

Even presuming Plaintiff had previously successfully traversed the area where she fell, the presumption that she therefore knew of the hazardous condition will only arise if that static condition was "readily discernible to a person exercising reasonable care for his own safety," Perkins v. Val D'Aosta Co., 699 S.E.2d 380, 383 (Ga. Ct. App. 2010) (internal quotations and citation omitted), and "where there [was] nothing to obstruct or interfere with [the invitee's] ability to see [the] 'static' defect," Thomas v. Exec. Comm. of Baptist Convention of State, 585 S.E.2d 217, 219 (Ga. Ct. App. 2003) (internal quotations and citation omitted). Georgia courts make clear that "[w]hen an obstruction is perfectly obvious and apparent, so that one looking ahead would necessarily see it, the fact that the plaintiff *merely failed to look* will not relieve her from the responsibility for her misadventure." Gilbert v. Flash Foods, LLC, No. 1:23-CV-03847-TRJ, 2025 WL 4059723, at *3 (N.D. Ga. Mar. 13, 2025) (quoting McLemore v. Genuine Parts Co., 722 S.E.2d 366, 369 (Ga. Ct. App. 2012). "The relevant inquiry . . . is whether the plaintiff's view of the hazard was obstructed at the point *immediately before* she was about to step on it." Id. (alterations adopted).

Defendant argues that "[i]t was incumbent upon [Plaintiff], as a matter of law, to use her eyesight for the purpose of discovering any discernible obstruction or defect in her path." (Doc. 59, p. 15 (quoting Emory Univ. v. Duncan, 355 S.E.2d 446, 448 (Ga. Ct. App. 1987).) Plaintiff testified that she did not know at the time of her fall what caused her to fall and she did not see a candle crate in the walkway because she was not looking at the floor prior to her fall. (Doc. 59-1, p. 28.) But Plaintiff's admission that she did not look at the floor while walking through the crowded store does not automatically establish her failure to exercise due care as a matter of law. Robinson, 493 S.E.2d at 414. Plaintiff testified that the store was crowded and that she was looking ahead (instead of at the floor) to avoid running into other customers. Moreover, there is sufficient

evidence that Plaintiff's view of the crate was obstructed prior to her fall.  See Gilbert, 2025 WL 4059723, at *3.  Here, based on the testimony, a reasonable jury could find that, between the crowded store and the overhang of the tables, Plaintiff's ability to see any candle crates protruding into the walkway was obstructed before she tripped.  (See doc. 59-1, p. 29 (testimony from Plaintiff that the candle crates were "under all of the tables, but you can't see them unless, like, you were sitting back, leaning back on the thing and looking around the store like this; then you would notice them.  But, like, when you're walking through shopping, it's not something—you don't go and look underneath the table like that").)  Moreover, Georgia law generally reserves to the jury questions about where "customers should be held responsible for looking or not looking," and summary judgment on this ground should only be granted where the record evidence of a static condition's being open and obvious is "plain, palpable, and undisputed," which is not the case here.  Jones v. Wal-Mart Stores E. LP, 800 F. App'x 681, 684 (11th Cir. 2020) (quoting American Multi-Cinema, Inc. v. Brown, 679 S.E.2d 25, 28 (Ga. Ct. App. 2009); Robinson, 493 S.E.2d at 414).

In sum, Defendant's argument that Plaintiff failed to exercise ordinary care for her own safety and failed to observe a static open and obvious condition is premised on disputed facts.  Those facts, viewed in the light most favorable to the Plaintiff, could lead a jury to conclude that the hazard was not open and obvious.  Thus, summary judgment is not warranted on this issue.[4]

---

[4]  Moreover, summary judgment is not warranted with respect to Defendant's general proximate cause argument because "questions regarding proximate cause are undeniably a jury question and may only be determined by the courts in plain and undisputed cases."  Pruette v. Phoebe Putney Mem'l Hosp., 671 S.E.2d 844, 848 (Ga Ct. App. 2008).  Given the genuine dispute as to Plaintiff's knowledge that any candle crates were in the walkway so as to create a hazard, this is not such a "plain and undisputed case[]."  Id.

**CONCLUSION**

For the above reasons, the Court **DENIES** Defendant Bath & Body Works, LLC's Motion

for Summary Judgment.  (Doc. 59.)

**SO ORDERED**, this 31st day of March, 2026.

R. STAN BAKER, CHIEF JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA